UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI, SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> and THE STATE OF MISSOURI ) <br> ) <br> ) <br>     Plaintiff, ) <br>     v. ) <br> ) <br> DELTA ASPHALT, INC., ) <br> ) <br>     Defendant. ) <br> _____) | **COMPLAINT** <br><br> Case No. 1:21-cv-29 |

The United States of America, by the authority of the Attorney General of the United States, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), and the state of Missouri, by and through the Attorney General of the State of Missouri and the Missouri Department of Natural Resources ("MDNR") (collectively, the "State"), file this complaint and allege as follows:

NATURE OF THE ACTION

1. This is a civil action brought against Delta Asphalt, Inc. ("Delta" or "Defendant") pursuant to Sections 106, 107(a), and 113(g) of the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9606, 9607(a), and 9613(g), as amended by the Superfund Amendments and Reauthorization Act of 1986 ("CERCLA"), and Section 260.530 of the Missouri Hazardous Waste Management Law, Mo. Rev. Stat. § 260.530, regarding the Operable Unit 5 ("OU-5") portion of the Madison County Mines Superfund Site in Madison County, Missouri ('Site"). Plaintiffs seek the recovery of unreimbursed response costs incurred,

and to be incurred, and the performance of response actions by the Defendant consistent with the National Contingency Plan, 40 C.F.R. Part 300 ("NCP"). The United States and the State also seek a declaratory judgment pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. §9613(g)(2) and 260.530(1) Mo. Rev. Stat., holding the Defendant liable for all future response costs that will be binding in any subsequent action or actions to recover further response costs incurred by the United States or State at or in connection with the Site.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action and over the Defendant under 28 U.S.C. §§ 1331, 1345, and 1367, and Section 113(b) of CERCLA, 42 U.S.C. § 9613(b).

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), because the relevant releases or threatened releases of hazardous substances occurred within this district.

## STATUTORY FRAMEWORK

4. CERCLA provides a mechanism for abating releases and threatened releases of hazardous substances and other pollutants and contaminants and for funding the costs of such abatement and related enforcement activities, which are known as "response actions." 42 U.S.C. §§ 9604(a); 9601(25).

5. Under Section 104(a)(1) of CERCLA, 42 U.S.C. § 9604(a)(1):

> Whenever (A) any hazardous substance is released or there is a substantial threat of such a release into the environment, or (B) there is a release or substantial threat of release into the environment of any pollutant or contaminant which may present an imminent and substantial danger to the public health or welfare, the President is authorized to act, consistent with the national contingency plan, to remove or arrange for the removal of, and provide for remedial action relating to such hazardous substance,

    pollutant, or contaminant at any time (including its removal from
    any contaminated natural resource), or take any other response
    measure consistent with the national contingency plan which the
    President deems necessary to protect the public health or welfare
    or the environment. When the President determines that such
    action will be done properly and promptly by the owner or
    operator of the facility or vessel or by any other responsible party,
    the President may allow such person to carry out the action,
    conduct the remedial investigation, or conduct the feasibility study
    in accordance with section 9622 of this title.

  6.  For CERCLA response actions and enforcement purposes, the Administrator of EPA is the President's delegate, as provided in operative Executive Orders.

  7.  Under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a):

    (1) [T]he owner and operator of a vessel or a facility… shall be liable for—

    (A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan . . .

  8.  Under Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), the United States is also authorized to seek injunctive relief necessary to abate the imminent and substantial endangerment to the public health or welfare, or the environment, that may result from an actual or threatened release of a hazardous substance at or from a facility.

*Missouri Hazardous Waste Management Law*

  9.  The Missouri Hazardous Waste Management Law, Chapter 260, Mo. Rev. Stat. (2010), provides that when there is a hazardous substance emergency the director of the Missouri Department of Natural Resources may clean up the hazardous substance and take any actions necessary to end the hazardous substance emergency if the person having control over a hazardous substance fails to take reasonable actions required by the director to clean up such hazardous substance or end such hazardous substance emergency. Mo. Rev. Stat. § 260.510

10. Section 260.500(5) of the Missouri Hazardous Waste Management Law, Mo. Rev. Stat. § 260.500(5), defines "hazardous substance" as:

> any substance or mixture of substances that presents a danger to the public health or safety or the environment and includes:…(b) Any element, compound, mixture, solution, or substance designated pursuant to Sections 101(14) and 102 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, and Section 302 of the Superfund Amendments and Reauthorization Act of 1986, as amended.

11. Section 260.500(6) of the Missouri Hazardous Waste Management Law, Mo. Rev. Stat. § 260.500(6), defines "hazardous substance emergency" as:

> any release of hazardous substances in quantities equal to or in excess of those determined pursuant to Section 101(14) or 102 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, and Section 304 of the Superfund Amendments and Reauthorization Act of 1986, as amended.

12. Section 260.530 of the Missouri Hazardous Waste Management Law, Mo. Rev. Stat. § 260.530, provides in pertinent part, that:

> [a]ny person having control over a hazardous substance shall be strictly liable to the state of Missouri for the reasonable cleanup costs incurred by the state as a result of the failure of such person to clean up a hazardous substance involved in a hazardous substance emergency in accordance with the requirements of sections 260.500 to 260.550 and rules promulgated by the department pursuant thereto.

## GENERAL ALLEGATIONS

13. The Site covers most of Madison County, which is located in southeastern Missouri, approximately 80 miles from St. Louis.

14. The Site has been broken into seven Operable Units (OUs) for addressing response actions.

15. The allegations in this complaint relate to OU-5 of the Site, also known as the Catherine Mines, Skaggs Tailings, and Little St. Francis River Tailings Pile and Mill Subsite.

16. Lead mining occurred within the Madison County Mines Superfund Site beginning in the early 1700s until the mid-1900s. Lead mining at OU-5 of the Madison County

4

Mines Superfund Site occurred from around 1901 to 1917, leaving chat and tailings piles at the Site, including on Delta Asphalt's property.

17. Lead is a metal that has been listed as a hazardous waste ("D008") in the regulations for the Resource Conservation and Recovery Act ("RCRA"). EPA classifies lead as a probable human carcinogen and as a cumulative toxicant. Exposure to lead can increase the risk of future adverse health effects, such as damage to the central nervous system, peripheral nervous system, and kidney and blood disorders.

18. Young children (typically defined as seven years of age or below) are the most sensitive population group potentially exposed to lead contamination at the Site. Young children are most susceptible to lead exposure because they have higher contact rates with soil and dust, absorb lead more readily than adults, and are more sensitive to the adverse effects of lead than older children and adults. The effect of exposure to lead contamination of greatest concern in children is impairment of the nervous system, including learning deficits, lowered intelligence, and adverse effects on behavior.

19. The Defendant, Delta Asphalt, Inc. ("Delta Asphalt"), is a person within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

20. Delta Asphalt is owned by Delta Companies, Inc., a highway and site development contractor doing business in Missouri, Arkansas, and Illinois.

21. Delta Asphalt was incorporated in Missouri in 1962.

22. Beginning in 1978, Delta Asphalt operated a hot asphalt plant on 140 acres within tOU-5.

23. Delta Asphalt later purchased this property within the OU-5 in 1988.

5

24. The EPA began working with the Missouri Department of Natural Resources ("MDNR") in the late 1980s on preliminary characterization of the Site.

25. In the mid-to-late 1990s, children living around mine waste from the Site were determined to exhibit elevated blood-lead levels.

26. EPA responded with removal assessment activities in early 2000, and the Site was added to the National Priority List in 2003.

27. Beginning in 2003, EPA implemented removal actions to address lead-contaminated soils in areas of Madison County with sensitive populations, including daycare centers, public recreational facilities, and homes with young children. Delta Asphalt agreed to allow EPA to use its property within OU5 as a soil repository for this removal action. When the removal actions were completed in 2006, over 800 residential properties had been remediated and approximately 205,000 cubic yards of lead-contaminated soil had been transported from residential properties to the repository on Delta Asphalt's property.

28. In 2011, Delta Asphalt sold 127.7 acres of its property at OU-5, and retained 12.57 acres, including most of the land containing the repository.

29. A focused Feasibility Study and Record of Decision ("ROD") were completed for OU-5 in 2012, and the Remedial Design was completed in 2014. The selected remedy for the Catherine Mines portion of OU-5, where Delta Asphalt's property is located, consisted of a low permeable cover, sediment excavation, on-site disposal, and monitored natural attenuation. EPA began implementing the remedial action for the Catherine Mines portion of the Site in 2014. The final repository footprint is approximately 12 acres, about eight acres of which are on the portion of the Site that Delta Asphalt owns. The remaining four acres are on the portion of the Site that Delta Asphalt sold in 2011.

30. EPA completed consolidation of mine waste, floodplain soil, and sediment in ponds from the Site to the repository in 2019, and final capping was completed in 2020. Transfer to MDNR for longterm maintenance is planned for 2021.

31. EPA has conducted various response actions at the Site.

32. As a result of these response actions, EPA has incurred estimated response costs of $9,590,384 in connection with OU-5.

FIRST CLAIM FOR RELIEF
**(Recovery of Response Costs under CERCLA, 42 U.S.C. § 9607)**

33. OU-5 is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

34. There have been releases, within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), of hazardous substances, within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), at the OU-5.

35. The United States has incurred costs of response, within the meaning of Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), in connection with the releases or threatened releases of hazardous substances at the OU-5.

36. The United States' response actions are not inconsistent with the NCP.

37. The Defendant is liable under Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1), as the current owner of property at the Site.

38. Pursuant to Section 107(a) of CERCLA, Defendant is liable to the United States for all response costs incurred in connection with OU-5.

39. Pursuant to Section 107(a) of CERCLA, 42 U.S.C. §9607(a), Defendant is liable to the United States for the response costs incurred by the United States in connection with the OU-5.

## SECOND CLAIM FOR RELIEF
**(Liability for Response Costs under Missouri Hazardous Law)**

40. Lead is defined as a "hazardous substance" pursuant to Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), and by incorporation and reference, Section 260.500(5)(b) of the Missouri Hazardous Waste Management Law, Mo. Rev. Stat. The release of this hazardous substance into the environment at or from OU-5 during the time that Defendant owned and/or operated the Site constitutes a "hazardous substance emergency" within the meaning of Section 260.500(6)(a) of the Missouri Hazardous Waste Management Law, Mo. Rev. Stat.

41. Pursuant to Section 260.530 of the Missouri Hazardous Waste Management Law, 260.530(1) Mo. Rev. Stat., Defendant is liable to the State for the cleanup costs incurred or to be incurred by the State in connection with the OU-5.

## PRAYER FOR RELIEF

42. Wherefore, the United States respectfully requests that this Court:

   a. Award the United States and the State a judgment against Defendant, for all costs incurred by the United States and the State in connection with the OU-5, plus interest;

   b. Enter a declaratory judgment of liability against Defendant that will be binding in any action to recover further response costs incurred by the United States or the State in connection with the OU-5.

   c. Award the United States its costs of this action; and

   d. Grant such other and further relief as the Court deems appropriate.

8

Respectfully Submitted,

**FOR THE UNITED STATES OF AMERICA:**

                         Jean E. Williams
                         Acting Assistant Attorney General
                         U.S. Department of Justice
                         Environment and Natural Resources Division

Dated:                     /s/Rachel Hankey_____
                         Rachel Hankey #226325(CA)
                         Trial Attorney
                         U.S. Department of Justice
                         Environment and Natural Resources Division
                         Environmental Enforcement Section
                         PO Box 7611
                         Washington, DC 20044
                         (415)744-6471
                         Rachel.hankey@usdoj.gov

                         JEFFREY B. JENSEN
                         United States Attorney
                         Eastern District of Missouri

                         SUZANNE MOORE
                         Assistant United States Attorney
                         Thomas F. Eagleton U.S. Courthouse
                         111 South 10th Street, 20th Floor
                         St. Louis, Missouri 63102
                         Suzanne.moore@usdoj.gov

**FOR THE STATE OF MISSOURI:**

Dated: 12/23/2020         /s/ Timothy P. Duggan
                         Timothy P. Duggan
                         Assistant Attorney General, MBE 27827
                         P.O. Box 899
                         Jefferson City, MO 65102-0899
                         Phone: 573-751-9802
                         Telefax: 573-751-5660
                         tim.duggan@ago.mo.gov